**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FLORENCE KOCHER,** : | |
|         **Plaintiff,** : | |
| : | |
|         **v.** : | **CIVIL ACTION** |
| : | **No. 22-3808** |
| **DENIS R. McDONOUGH,** : | |
| **SECRETARY OF VETERANS AFFAIRS,** : | |
| **UNITED STATES DEPARTMENT OF** : | |
| **VETERANS AFFAIRS** : | |
|         **Defendant.** : | |

**McHUGH, J.**                                                                                                                               **May 26, 2023**

**MEMORANDUM**

Plaintiff, a 66-year-old woman, asserts claims of sex discrimination and age discrimination against her employer, the Department of Veterans Affairs. Plaintiff was not terminated, but nonetheless asserts that her employer engaged in disparate treatment of her due to her age and sex. She further alleges that her supervisor's harassment related to her sex was pervasive enough to create a hostile work environment, and that he retaliated against her for filing an EEOC complaint. The VA moves to dismiss the case in its entirety for failure to state a claim. Because Plaintiff does not plead a cognizable adverse employment action and does not present sufficient facts to establish a hostile work environment, her discrimination claims will be dismissed. But because Plaintiff has set forth facts that her supervisor explicitly harassed her for making an EEOC complaint, I must allow her retaliation claim to proceed.[1]

---

[1] Kocher previously sued Secretary McDonough for Title VII and ADEA discrimination and retaliation. *See Kocher v. McDonough*, No. 21-921 (Savage, J.). That suit, dismissed on summary judgment, involved allegations from approximately the same period at issue here but different staff at VAMC.

**I.     Relevant Background**

Plaintiff Florence Kocher is a 66-year-old woman who has been employed as a Patient Safety Manager at the Veterans Affairs Medical Center (VAMC) in Philadelphia since 2013. Am. Compl. ¶ 14, ECF 13. From January 2017 to July 2018, Kocher's second-line supervisor was Bruce Boxer, a 58-year-old man. *Id.* ¶ 15. Kocher alleges that Boxer engaged in an array of discriminatory behavior during his tenure as her supervisor, which I recount chronologically and for purposes of resolving the motion must accept as true.

Kocher asserts that Boxer's discriminatory treatment of her began almost immediately once he became her second-line supervisor, when Boxer falsely accused Kocher of approving a proof for the erroneous printing of 750 flyers on January 3, 2017. *Id.* ¶ 17. Two months later, Boxer criticized Kocher based on the findings of an administrative investigation which Kocher "adamantly denied" and was in the process of appealing. *Id.* ¶ 18. Kocher subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 23, 2017. *Id.* ¶ 11; Am. Compl. Ex. A, ECF 13-1. Shortly thereafter, Boxer "nearly struck [Kocher's] hand with a pen." Am. Compl. ¶ 19. Four months later, Boxer falsely accused Kocher of not participating in a national conference call for an assigned project and required her to only communicate through him on the project. *Id.* ¶ 20. Then, in December, Boxer falsely accused Kocher of failing to furnish him with blueprints which he had never requested. *Id.* ¶ 22.

In February and March 2018, Boxer and others at the VAMC took several disciplinary actions against Kocher. Around February 6, Boxer placed Kocher on a performance improvement plan ("PIP"), though Boxer ultimately rescinded the PIP after Kocher's union filed a grievance on her behalf. *Id.* ¶ 23. Two weeks after, Boxer proposed a meeting with Kocher to discuss their "issues" but refused to meet after Kocher asked to have a union representative attend. *Id.* ¶ 24.

2

On March 15, 2018, Boxer scheduled a meeting titled "Behavior" on Kocher's publicly visible Outlook calendar. *Id*. ¶ 25. The same day, Kocher received a proposed suspension, which she asserts was issued by Boxer or another employee, Tracey Schoen – though the suspension was not sustained. *Id*. ¶ 26. Around this time, Kocher also states that VAMC director Daniel Hendee issued her a formal reprimand solely based on information provided by Boxer. *Id*. ¶¶ 36-37.

Amid these disciplinary actions, Kocher filed a second charge of discrimination with the EEOC on April 24, 2018. *Id*. ¶ 11; Am. Compl. Ex. B, ECF 13-2.

Kocher's working relationship with Boxer remained tenuous in the spring and summer of 2018. In April 2018, Boxer accused Kocher of "colluding with another older female employee" against other employees at VAMC. Am. Compl. ¶ 27. In July, Boxer rated Kocher as "unsatisfactory" in a performance evaluation and issued Kocher's 2016-17 performance evaluation nearly a year late. *Id*. ¶¶ 28, 30. That same month, Boxer placed Kocher on a second PIP, without a union representative present, which Boxer also rescinded after Kocher's union filed a grievance on her behalf. *Id.* ¶¶ 31-33. Seemingly in light of their difficult working relationship, Boxer told Kocher that he wanted to engage in weekly "marriage counseling" with her. *Id.* ¶ 35.

Beyond these specific incidents, Kocher also alleges that Boxer engaged in several types of discriminatory and retaliatory behavior throughout his tenure as her supervisor. Boxer's alleged illegal conduct includes assigning Kocher special projects with unrealistic goals and standards, falsely accusing her of not performing or completing her various work assignments, and frequently yelling at Kocher without cause. *Id.* ¶ 16. Kocher further alleges that Boxer "consistently and continually raised Plaintiff's Equal Employment Opportunity, Administrative Investigation Board, and Office of Risk Management matters" in his conversations with her. *Id.*

Partly based on the treatment she experienced, Kocher argues that there was clear gender and age bias in her department. She only witnessed Boxer screaming at female employees, for example, and reportedly has "no knowledge of Mr. Boxer similarly screaming at male employees." *Id.* ¶ 39. Kocher's coworker Peter Leporati also referred to Kocher as his "work wife," which Kocher alleges occurred repeatedly in Boxer's presence. *Id.* ¶ 40.

Kocher alleges that Boxer's constant screaming caused her to suffer an unspecified "major medical event." *Id.* ¶ 39. Kocher further claims that because of Boxer's discriminatory treatment, she has suffered "economic and non-economic damages" including "denial of wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance" at the VAMC. *Id.* ¶¶ 45, 49.

The EEOC dismissed Kocher's discrimination charge related to Boxer on July 1, 2022, enabling her to file a federal lawsuit. *Id.* ¶ 12; Am. Compl. Ex. C, ECF 13-3. Kocher subsequently filed this action on September 27, 2022, asserting claims of discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq. See* ECF 1. After I dismissed her original complaint without prejudice, Kocher filed this amended complaint which added a claim that she was subjected to a hostile work environment because of her sex. *See generally* ECF 13. Defendant now moves to dismiss all of Kocher's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

4

**III. Discussion**

Kocher does not allege an "adverse employment action" sufficient to state Title VII and ADEA discrimination claims, nor does she demonstrate that she was subjected to hostile working conditions because of her sex. These claims will therefore be dismissed. Plaintiff's allegations of harassment by Boxer *do* give rise to a cognizable claim of retaliation for asserting her statutory rights, however, and I will deny the motion to dismiss as to that claim.

> **A. Kocher does not plead a disparate treatment claim under Title VII or the ADEA because she does not identify a cognizable adverse employment action.**

Because Kocher lacks direct evidence of sex or age discrimination, the well-established burden-shifting framework applies to her discrimination claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this framework, Kocher must first establish a prima facie case of discrimination. To do so, she must establish that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of unlawful discrimination. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-411 (3d Cir. 1999).

Kocher cannot establish a prima facie case because she cannot show that she suffered an adverse employment action. An adverse employment action under Title VII and the ADEA is any action that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Drummer v. Trustees of Univ. of Pa.*, 286 F. Supp. 3d 674, 680 n.29 (E.D. Pa. 2017) (Rufe, J.) (citations omitted). Kocher was not terminated and does not identify any material economic impact of the alleged discrimination.[2] She alleges that she faced a

---

[2] Kocher pleads nothing about the economic impacts of Boxer's actions other than a statement at the end of her Complaint that she has "sustained economic and non-economic damages, including, but not limited to, denial of wages and other benefits, lost interest on those wages and other benefits, and loss of any potential

litany of unfounded criticism and micromanagement from Boxer, but "[u]nnecessary derogatory comments do not rise to the level of adverse employment actions." *Rosati v. Colello*, 94 F. Supp. 3d 704, 714 (E.D. Pa. 2015) (Dalzell, J.). Kocher's allegations regarding formal discipline are also insufficient, as placement on a PIP and similar employer measures generally do not qualify as adverse employment actions absent accompanying changes to pay, benefits, or employment status. *Leftwich v. Lew*, No. 15-cv-300, 2015 WL 8773274, at *7 n.83 (E.D. Pa. Dec. 14, 2015), *aff'd sub nom. Leftwich v. Sec'y U.S. Dep't of the Treasury*, 741 F. App'x 879 (3d Cir. 2018).

As noted in her Complaint, both of Kocher's PIPs also were ultimately withdrawn, and she fails to identify any concrete impacts of her PIP placement upon her pay or benefits. I will therefore dismiss her disparate treatment discrimination claims with prejudice.

### B. Kocher sufficiently pleads a retaliation claim.

To state a claim of retaliation for asserting her rights under Title VII and the ADEA, Kocher must show that (1) she engaged in protected activity, (2) her employer took adverse action against her, and (3) there is a causal link between the protected activity and the adverse action. *See Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). "Adverse action" in the retaliation context encompasses a broader range of employer actions than in the discrimination context and includes all actions that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir.

---

opportunity to advance." Am. Compl. ¶¶ 45, 49. But such a conclusory allegation is insufficient to plead facts about economic impacts. *See Fowler*, 578 F.3d at 210 (stating that "conclusory or 'bare-bones' allegations" are insufficient for a claim to survive a motion to dismiss).

2019) (stating that "[u]nlike the antidiscrimination provision, the antiretaliation provision is not limited to employer action that affects the terms and conditions of a claimant's employment").

Kocher engaged in clearly protected activity – filing an EEO complaint. *See* ECF 13-1; ECF 13-2. Kocher also alleges that within a few months of her second EEO complaint, she was placed on a PIP, received an "unsatisfactory" performance evaluation from Boxer, and Boxer accused Kocher of "colluding with another older female employee" against other employees at the VAMC. Am. Compl. ¶¶ 27-31. Even if some of these actions would not be cognizable as adverse actions on their own, "'context matters' such that 'an act that would be immaterial in some situations is material in others.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (quoting *Burlington*, 548 U.S. at 69). Taken in context, Boxer's sustained negative treatment of Kocher would plausibly discourage other workers from making their own EEO complaints.

Kocher also sufficiently alleges a causal link between her protected activity and these adverse actions, given that Boxer repeatedly raised Kocher's EEO complaints during his tenure as her supervisor. Temporal proximity is not unusually suggestive of retaliation here, as Kocher only points to retaliatory actions that occurred five months after her June 2017 complaint and three months after her April 2018 complaint.[3] *See Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 261 n.8 (3d Cir. 2017) (holding that a period of two months cannot raise an inference of retaliation). Nonetheless, a "pattern of antagonism" along with reviewing the evidence "as a whole" may also create an inference of retaliatory motive. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *see also Robinson v. SEPTA*, 982 F.2d 892, 894 (3d Cir. 1993) (holding that "[t]he

---

[3] Kocher claims that Boxer "nearly struck" her hand with a pen one month after her 2017 complaint, which alone may not qualify as a retaliatory action, but in context this action supports the narrative that Boxer treated Kocher negatively due to her administrative complaints.

mere passage of time is not legally conclusive proof against retaliation"). Here, Kocher has pled a pattern of antagonism and alleges that Boxer "consistently and continually raised" Kocher's EEO and other complaints. Am. Compl. ¶ 16. Taken together, these allegations are enough to establish a cognizable claim at the motion to dismiss stage.

### C. Kocher does not plead a hostile work environment claim because she does not plausibly allege that she experienced discrimination due to her sex.

Kocher's original complaint did not assert a hostile work environment claim, and during argument on the first motion to dismiss her counsel represented that such claim was not being advanced.[4] Kocher's attempt to conjure such a claim through the amended complaint falls well short of the mark.

To prevail on a "hostile work environment" theory of discrimination, a plaintiff must prove (1) she suffered intentional discrimination because of her protected class status; (2) the discrimination was severe or pervasive; (3) she was detrimentally affected by the discrimination; (4) the detrimental effect was objectively reasonable; and (5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packing Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Kocher's hostile work environment claim fails because she does not demonstrate that her treatment by her supervisor was severe or pervasive, nor can she demonstrate that her treatment was rooted in sex discrimination.

First, Kocher's complaint does not present sufficient facts to demonstrate that Boxer's treatment of her was because of her sex. Though Kocher need not present direct evidence of discrimination, she must still present evidence that she was harassed in a way that "make[s] it clear

---

[4] Kocher's Complaint only advances her hostile work environment claim on a sex discrimination theory and does not assert that she faced a hostile work environment based on her age. *See* Am. Compl. ¶ 62.

that [her supervisor] is motivated by general hostility to the presence of women in the workplace." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278 (3d Cir. 2001) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998))*; see also Oncale*, 523 U.S. at 81 (holding that regardless of which evidentiary route a plaintiff chooses to pursue, they "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex") (emphasis in original) (cleaned up).

Here, Kocher notes that Boxer told her in passing that he wanted to engage in weekly "marriage counseling" with her. Am. Compl. ¶ 35. But beyond this allegation – an offhand metaphor that cannot alone support a hostile work environment claim – the only additional factual allegation suggesting discriminatory intent is that Boxer "screamed at female employees" but never "similarly scream[ed] at male employees." *Id*. ¶ 39. Without more, however, such a broad, purely observational allegation is insufficient to suggest sex-based discrimination. Absent specific examples showing that Boxer had discriminatory intent, Kocher's allegations simply suggest that Boxer was a bad boss with personal animosity towards her – and conduct motivated by a bad working relationship does not give rise to a hostile work environment claim under Title VII. *Koschoff v. Henderson*, 109 F. Supp. 2d 332, 346 (E.D. Pa. 2000) (Van Antwerpen, J.), *aff'd sub nom. Koschoff v. Runyon*, 35 F. App'x 357 (3d Cir. 2002).

Second, even assuming that Boxer's treatment of Kocher was driven by her gender, Kocher fails to demonstrate that her harassment was severe enough to plausibly constitute a Title VII violation. "The question of 'whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Moody v. Atl. City*

*Bd. of Educ.*, 870 F.3d 206, 215 (3d Cir. 2017) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001)).  Here, Kocher claims that she endured sporadic incidents of unjustified yelling, false accusations of inappropriate conduct, and discipline or reprimands during the year and a half when Boxer was her supervisor.  But even when viewed as a whole, these actions do not appear severe enough to constitute a hostile work environment.  As the Government rightly points out, "isolated incidents (unless extremely serious)" generally do not give rise to a hostile work environment claim.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116 (2002) (holding that a hostile work environment claim requires a plaintiff to demonstrate that their workplace was "permeated with discriminatory intimidation, ridicule, and insult").  And although Boxer's behavior may have been unprofessional, Title VII is not intended to cover conduct that "would merely run afoul of a general civility code."  *Yarnall v. Phila. Sch. Dist.*, 57 F. Supp. 3d 410, 433 (E.D. Pa. 2014) (Restrepo, J.) (citing *Oncale*, 523 U.S. at 80-81).

As such, I will dismiss Kocher's hostile work environment claim.

**IV.     Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part.  An appropriate order follows.

   /s/ Gerald Austin McHugh
United States District Judge